IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRISTIAN DAL BOSCO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NRX PHARMACEUTICALS, INC., JONATHAN C. JAVITT, and WILLIAM FRICKER,<br><br>Defendants. | Case No.<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Cristian Dal Bosco ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding NRx Pharmaceuticals, Inc. ("NRx" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired NRx securities between June 1, 2021 and November 4, 2021, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. NRx is a clinical-stage small molecule pharmaceutical company that develops various therapeutics for the treatment of central nervous system disorders and life-threatening pulmonary diseases. The Company's products include, among others, ZYESAMI, an investigational pre-commercial drug for COVID-19 related respiratory failure.

3. In June 2021, NRx announced that it filed an application with U.S. Food and Drug Administration ("FDA") requesting Emergency Use Authorization ("EUA") for ZYESAMI (Aviptadil-acetate) to treat critically ill COVID-19 patients suffering with respiratory failure (the "ZYESAMI EUA Application").

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the ZYESAMI EUA Application contained insufficient data regarding the potential benefits and risks of ZYESAMI; (ii) accordingly, the FDA was unlikely to approve the ZYESAMI EUA Application in its present form; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      On November 4, 2021, NRx issued a press release "announc[ing] that the [FDA] has declined to issue an [EUA] for ZYESAMI® (aviptadil). The FDA stated that it was unable to issue the EUA at this time due to insufficient data regarding the known and potential benefits of the medicine and the known and potential risks of ZYESAMI in patients suffering from Critical COVID-19 with respiratory failure."

6.      On this news, NRx's stock price fell $2.27 per share, or 25.45%, to close at $6.65 per share on November 5, 2021.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). NRx is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12. Plaintiff, as set forth in the attached Certification, acquired NRx securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13. Defendant NRx is incorporated in Delaware with principal executive offices located at 1201 Orange Street, Suite 600, Wilmington, Delaware 19801.  NRx's common stock and warrants trade in an efficient market on the Nasdaq Stock Market ("NASDAQ") under the trading symbols "NRXP" and "NRXPW", respectively.

14. Defendant Jonathan C. Javitt ("Javitt") has served as NRx's Chief Executive Officer at all relevant times.

15. Defendant William Fricker ("Fricker") has served as NRx's Chief Financial Officer at all relevant times.

16. Defendants Javitt and Fricker are sometimes referred to herein as the "Individual Defendants."

17. The Individual Defendants possessed the power and authority to control the contents of NRx's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of NRx's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with NRx, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed

from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

18. NRx and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19. NRx is a clinical-stage small molecule pharmaceutical company that develops various therapeutics for the treatment of central nervous system disorders and life-threatening pulmonary diseases. The Company's products include, among others, ZYESAMI, an investigational pre-commercial drug for COVID-19 related respiratory failure.

20. In June 2021, NRx announced that it filed an application with FDA requesting EUA for ZYESAMI (Aviptadil-acetate) to treat critically ill COVID-19 patients suffering with respiratory failure.

### Materially False and Misleading Statements Issued During the Class Period

21. The Class Period begins on June 1, 2021, when NRx issued a pre-market press release announcing that it filed the ZYESAMI EUA Application with the FDA. The press release stated, in relevant part:

> NRx [. . .] today announced it has filed an application with [FDA] requesting [EUA] for ZYESAMI™ (Aviptadil-acetate), to treat Critically Ill COVID-19 patients suffering with respiratory failure. Consistent with previously announced top-line data, the study identified a statistically significant increase in the likelihood that patients treated with ZYESAMI™ would be alive and free of respiratory failure at 60 days, compared to those treated with placebo, and identified a significantly shorter median hospital stay.[] The clinical study report filed with FDA further documents statistically significant advantages for ZYESAMI™ on all major secondary endpoints.

> "The patients enrolled in our study were in the ICU, having exhausted all approved treatments for COVID-19," said [Defendant Javitt]. "We look forward to working as quickly as possible with the FDA in hopes of providing critically ill patients with a new medicine that will increase their chances of recovery and survival, enabling them to leave the hospital and return to their families significantly sooner."

22.     On June 15, 2021, NRx issued a press release announcing, among other updates, that positive data from its ZYESAMI™ (Aviptadil) Expanded Access Protocol ("EAP") "are Congruent with the Randomized Control Phase 2b/3 ZYESAMI™ (Aviptadil) Trial Data Submitted to [FDA] in Support of [EUA]" and that the "EAP Data [is] to be Submitted to [the] FDA in Support of [the] EUA Filing[.]"

23.     On July 19, 2021, NRx issued a press release entitled, "NRx Pharmaceuticals Presents Evidence ZYESAMI™ (aviptadil) Helps Prevent "Cytokine Storm" in Patients with COVID-19."  The press release stated, in relevant part:

> The presentation identifies a statistically significant effect of ZYESAMI™ (aviptadil) in preventing the sharp rise in cytokines, commonly associated with mortality in patients with COVID-19. In the recently-completed phase 2b/3 trial, patients treated with placebo experienced a statistically significant elevation in interleukin 6 (IL-6) cytokine levels, whereas those treated with ZYESAMI™ had a minimal increase in IL-6. Change in cytokine level was a prespecified endpoint of the study.
>
> ***
>
> The cytokine data were collected as part of the phase 2b/3 trial of ZYESAMI™ (aviptadil) compared to placebo, in critically ill patients with COVID-19 respiratory failure. The effect was noted across a diverse set of patients, suffering different levels of COVID-19 severity and treated in both tertiary care and community hospitals.
>
> NRx has submitted these findings to the US Food and Drug Administration (FDA) as a supplement to its pending application for Emergency Use Authorization, (EUA) and is submitting a biomarker letter of intent to the FDA as part of its biomarker program, authorized under the 21st Century Cures Act.
>
> "At a time when hospital admissions for COVID are rising worldwide, these placebo-controlled biomarker data suggest that aviptadil may play a critical role in preventing the sudden elevation of cytokines that is associated with mortality," said

> [Defendant Javitt.] "This linkage between the clinical effect of aviptadil on survival and recovery and a measurable biologic change in cytokine levels provides a basis for seeking a biomarker-based regulatory path as envisioned by the 21st Century Cures Act. The lethal impact of "cytokine storm" is associated with mortality in a variety of lethal conditions including Acute Respiratory Distress Syndrome, a common cause of death in sepsis, and amniotic fluid embolus, a primary cause of maternal death during pregnancy."
>
> NRx continues to respond to FDA information requests for additional data in support of the currently pending EUA application for ZYESAMI™ in treating critically-ill patients with COVID-19.

24.     On July 22, 2021, NRx issued a press release entitled, "NRx Pharmaceuticals Announces First Successful Commercial Formulation for ZYESAMI™ (aviptadil), Enabling Volume Manufacture, Shipping, and Stockpiling of COVID-19 Medication Subject to Regulatory Approval."  The press release stated, in relevant part:

> NRx [. . .] announced today it has validated the first commercial formulation of ZYESAMI™ (aviptadil) for intravenous use, allowing for high volume manufacture, with an anticipated one year or greater stability, under appropriate storage conditions. Simultaneously, NRx has achieved a 30-to-50-fold increase in its manufactured lot size of aviptadil, with a concurrent 90% reduction in the cost of its peptide supply. These two developments position NRx to potentially deliver millions of doses of ZYESAMI™ as potential regulatory approvals are obtained in various regions worldwide.
>
> "When we began developing aviptadil for treatment of COVID-19, we discovered that the original RLF-100 formulation and manufacturing method had only a few weeks of stability, leaving hospitals unable to stock the investigational medicine in pharmacies, and leaving aviptadil out of consideration for national strategic stockpiles. Moreover, the high cost of peptide and an inability to manufacture more than 100 grams a month limited the commercial utility of aviptadil," said [Defendant Javitt]. "We have now turned the corner and can produce both the aviptadil peptide and finished medicine in million dose quantities. We have also developed and validated the first modern chromatography assays required to ensure the purity and stability of the drug product. The new formulation method and high-speed manufacturing process adapts to the fragile nature of vasoactive intestinal peptide."
>
> ***
>
> The successful new formulation and manufacturing scaleup of ZYESAMI™ allows NRx to relaunch its Expanded Access and Right to Try programs as it continues to

7

seek Emergency Use Authorization in the United States. These programs are designed to afford patients at highest risk of death from COVID-19, and who have no other therapeutic options, the ability to access ZYESAMI™ on an investigational basis.

25. On August 16, 2021, NRx issued a press release announcing a second quarter 2021 financial update. That press release quoted Defendant Javitt, who stated, in relevant part, that "[w]e have continued to make substantial progress as a company with the filing of an EUA request for ZYESAMI in the US on May 31st."

26. On August 17, 2021, NRx hosted an earnings call with investors and analysts to discuss the Company's Q2 2021 results (the "Q2 2021 Earnings Call"). During the scripted portion of the Q2 2021 Earnings Call, Defendant Javitt stated, in relevant part:

> Given the urgency in finding new therapeutic options for the treatment of severe COVID-19, we have rapidly moved ZYESAMI for a robust clinical development plan consisting of one recently completed and three ongoing clinical trials. Data from a phase 2b/3 randomized controlled trial studying intravenous ZYESAMI in patients with critical COVID-19, has shown a statistically significant difference in the primary endpoint of patients being alive and free of respiratory failure at day 60. These are patients who started out in the ICU when controlling for baseline severity and also controlling for whether they were treated in a tertiary versus a regional hospital.
>
> Without controlling for the site of care for the type of hospital, we were able to demonstrate a twofold increased odds of survival across all patients and all hospitals in the study at a statistically significant level. Moreover, the patients who received placebo demonstrated a tenfold increase in the level of IL-6 cytokine, that's the inflammatory cytokine that we discussed earlier by day seven, compared to only a twofold increase in IL-6 cytokine among those who are treated with ZYESAMI, irrespective of the site of care or the patient's baseline severity.
>
> Those who suffered this cytokine storm, as is commonly known, were more likely to die from COVID in the ICU than those who did not suffer this cytokine storm. This, the EUA submission that's pending before the FDA suggests that a significant biological effect was seen across all patients, a significant effect on survival was seen across all patients without regard to site of care, and the end points of whether patients have both survived and recovered by day 60 requires controlling for whether patients were hospitalized in tertiary care or community hospitals. The data has been submitted for peer review publication.

> The findings in tertiary care hospitals with ZYESAMI neared the six fold difference in mortality and recovery that was observed in a 45 patient administratively controlled open-label study at the Houston Methodist Hospital, one of the nation's Top 10 Tertiary Care Hospitals. Based on these encouraging trials, the National Institutes of Health selected ZYESAMI and it's ACTIV-3b Critical Care clinical trial, also called TESICO.

27. Further, when asked when the Company will "get EUA," Defenadnt Javitt responded:

> Well, as biotech investors know, the approval conversation with FDA, it's a dynamic scientific interaction. And we're far from the only company in this EUA dialogue with FDA. But we're encouraged that FDA asked its first questions of us within a few weeks of our EUA submission. We continue to engage with FDA in providing additional statistical analyses in order to support the review, given the limited therapeutic options that are available to patients with critical COVID-19, we remain firm in our belief that the results of our Phase 2b/3 study demonstrates clearer and significant -- statistically significant improvement in patient survival and warranted grants of emergency use.

28. The statements referenced in ¶¶ 21-27 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the ZYESAMI EUA Application contained insufficient data regarding the potential benefits and risks of ZYESAMI; (ii) accordingly, the FDA was unlikely to approve the ZYESAMI EUA Application in its present form; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

29. On November 4, 2021, NRx issued a press release "announc[ing] that the [FDA] has declined to issue an [EUA] for ZYESAMI® (aviptadil). The press release stated, in relevant part:

9

> The FDA stated that it was unable to issue the EUA at this time due to insufficient data regarding the known and potential benefits of the medicine and the known and potential risks of ZYESAMI in patients suffering from Critical COVID-19 with respiratory failure. In its letter, the FDA noted that so far, it has reviewed safety in only 131 randomized patients treated with ZYESAMI. NRx will attempt to coordinate a review by the FDA of the 150 or more additional patients already treated with ZYESAMI in the NIH ACTIV-3b trial. Last week, the study's Data Safety and Monitoring Board reviewed the ongoing NIH ACTIV-3b trial and found no new safety issues.
>
> "Yesterday, more than 1,500 Americans and many more around the world died lonely deaths from COVID-19, isolated from their loved ones in ICUs despite widespread vaccination and currently-available approved treatments," said [Defendant Javitt.] "We believe that ZYESAMI has demonstrated a high degree of safety and a two-fold increase in the odds of surviving the ICU. Patients treated at the nation's top hospitals with ZYESAMI had a four-fold increase in odds of survival. We will work actively with the FDA to deliver the data it has requested so that we may offer those patients another chance at life, and have asked the FDA for a Type A meeting that will include the experience of physicians who have witnessed the effects of our medicine firsthand and the experience of patients who are alive today because they were given one last chance at life. In the meantime, we are actively engaged with regulators and potential partners on multiple continents to advance ZYESAMI towards regulatory approval. Now that we have completed the Chemical and Manufacturing Controls (CMC) required for traditional approval pathways, we will move towards filing for accelerated approval based on the unexpectedly strong biomarker results seen in our two clinical trials."

30. On this news, NRx's stock price fell $2.27 per share, or 25.45%, to close at $6.65 per share on November 5, 2021.

31. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired NRx securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein,

10

the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, NRx securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by NRx or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of NRx;

- whether the Individual Defendants caused NRx to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of NRx securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

37. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

38. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- NRx securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold NRx securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

39. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

40. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

41. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

42. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

43. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of NRx securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire NRx securities

and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

44. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for NRx securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about NRx's finances and business prospects.

45. By virtue of their positions at NRx, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

46. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of NRx, the Individual Defendants had knowledge of the details of NRx's internal affairs.

47. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of NRx. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to NRx's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of NRx securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning NRx's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired NRx securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

48. During the Class Period, NRx securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of NRx securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of NRx securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of NRx securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

49. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

50. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

51. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52. During the Class Period, the Individual Defendants participated in the operation and management of NRx, and conducted and participated, directly and indirectly, in the conduct of NRx's business affairs. Because of their senior positions, they knew the adverse non-public information about NRx's misstatement of income and expenses and false financial statements.

53. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to NRx's financial condition and results of operations, and to correct promptly any public statements issued by NRx which had become materially false or misleading.

54. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which NRx disseminated in the marketplace during the Class Period concerning

NRx's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause NRx to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of NRx within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of NRx securities.

55. Each of the Individual Defendants, therefore, acted as a controlling person of NRx. By reason of their senior management positions and/or being directors of NRx, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, NRx to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of NRx and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

56. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by NRx.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: January 18, 2022                                    Respectfully submitted,

                                                                                  **BIELLI & KLAUDER, LLC**

                                                                                  */s/Ryan M. Ernst*
                                                                                  Ryan M. Ernst, Esq. (No. 4788)
                                                                                  1204 N. King Street
                                                                                  Wilmington, DE 19801
                                                                                  Main: (302) 803-4600
                                                                                  Direct: (302) 321-5411
                                                                                  rernst@bk-legal.com

                                                           **POMERANTZ LLP**
                                                            Jeremy A. Lieberman
                                                           (*pro hac vice* application forthcoming)
                                                           J. Alexander Hood II
                                                           (*pro hac vice* application forthcoming)
                                                           Thomas H. Przybylowski
                                                           (*pro hac vice* application forthcoming)
                                                           600 Third Avenue
                                                           New York, New York 10016
                                                           Telephone: (212) 661-1100
                                                           Facsimile: (212) 661-8665
                                                           jalieberman@pomlaw.com
                                                           ahood@pomlaw.com
                                                           tprzybylowski@pomlaw.com

                                                           *Attorneys for Plaintiff*